# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 10, 2014

## IN RE R.L.M.

**Appeal from the Juvenile Court for Sullivan County**
**No. J16565      J. Klyne Lauderback, Judge**

_____

**No. E2013-02723-COA-R3-PT-FILED-JANUARY 29, 2015**

_____

This is a parental termination case regarding R.L.M., the daughter of unmarried parents, V.R.G. (Mother) and J.M. (Father).  The trial court found clear and convincing evidence of (1) a failure to provide a suitable home and (2) persistence of the conditions that led to the child's removal.  The court also found, again by clear and convincing evidence, that termination is in the child's best interest.  Father appeals.[1]  He contends generally that the evidence does not clearly and convincingly establish the grounds for termination and best interest.  The Department of Children Services (DCS) takes a different approach.  It concedes that an essential element of its case was not established by the proof.  It contends that, as a consequence, the judgment of the trial court must be reversed.  Because we agree with the State, we (1) reverse the judgment of the trial court terminating Father's rights and (2) dismiss the petition in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Nicholas A. Schaefer, Kingsport, Tennessee, for the appellant, J.M.

Herbert H. Slatery, III, Attorney General and Reporter, and Jordan Scott, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

---

[1]The trial court also terminated Mother's parental rights.  Mother filed a timely appeal, but failed to file an appellate brief in response to a show cause order of this Court.  As a consequence, her appeal was dismissed.

## OPINION

In view of DCS's concession, we begin our analysis by focusing on an element common to both termination grounds initially relied upon by the State. That common element is an order, entered prior to the filing of the petition, in which the child was adjudicated dependent and neglected.

Two related statutes are implicated by the termination grounds alleged in this case, *i.e.*, Tenn. Code Ann. § 36-1-113(g) (2014) and Tenn. Code Ann. § 36-1-102 (2014). As relevant here, § 36-1-113(g), in addressing termination grounds, provides as follows:

> (g) Initiation of termination of parental . . . rights may be based upon any of the grounds listed in this subsection (g).
>
> * * *
>
> (1) Abandonment by the parent or guardian, *as defined in § 36-1-102,* has occurred;
>
> * * *
>
> (3) *The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months* and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of [ ] a parent or parents or a guardian or guardians, still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to [ ] a parent or parents or a guardian or guardians in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(1), (3) (emphasis added). As can be seen, § 36-1-102 is

specifically mentioned in § 36-1-113(g)(1). As relevant in this case, in § 36-1-113(g)(1), the pertinent language is "[a]bandonment . . . as defined in 36-1-102 has occurred." § 36-1-102(1)(A)(ii) provides, in pertinent part, as follows:

> The child has been removed from the home of [ ] a parent or parents or a guardian or guardians *as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child,* as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the a parent or parents or a guardian or guardians *to establish a suitable home for the child*, but that [ ] a parent or parents or a guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

Tenn. Code Ann. § 36-1-102(1)(A)(ii) (emphasis added). As can be seen, the statutory definition of abandonment by failure to provide a suitable home expressly requires that there be proof the child was removed from the home of a parent "as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child. . . ." *Id.; In re Corey N.A.*, No. E2009-01293-COA-R3-PT, 2010 WL 2490758 at *4 (Tenn. Ct. App. E.S., filed June 21, 2010)("The statute specifically and expressly requires that the juvenile court must have adjudicated the child(ren) to be dependent and neglected"); *In re Zmaria C.*, No. M2009-02440-COA-R3-PT, 2010 WL 3328009 at *6 (Tenn. Ct. App. M.S., filed Aug. 24, 2010)("To establish the ground of abandonment due to a parent's failure to provide a suitable home for the children, DCS must establish that the children were removed from the parents' home by order of the court in which the children were found to be . . . dependent and neglected . . . at least four months prior to the filing of the petition to terminate the parent's rights.").

With respect to the ground of persistence of conditions as addressed in Tenn. Code Ann. § 36-1-113(g)(3), this Court has similarly held that this applies as a ground for

termination of parental rights "only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S*., 182 S.W.3d 838, 874 (Tenn. App. 2005).

In *Audrey S*., we addressed the various hearings at play in juvenile court proceedings. We observed, in relevant part, as follows:

> The statutes and rules governing procedure in the juvenile courts provide for three types of hearings in cases where a child is alleged to be dependent, neglected, or abused: (1) preliminary hearings; (2) adjudicatory hearings; and (3) dispositional hearings. The function of the adjudicatory hearing is to determine whether the allegations of dependency, neglect, or abuse are true. The Tennessee Rules of Evidence apply . . . , and the juvenile court's finding that a child is dependent, neglected, or abused must be based on clear and convincing evidence[.]

*Id*.

In the present case, the record before us contains only a September 12, 2012 temporary custody order that was entered as part of a collective exhibit at trial. In that temporary order, the juvenile court found probable cause to believe that the Child was dependent and neglected based on an immediate threat to her health or safety and that no less drastic alternative to removal was then available. The court set the matter for a "preliminary hearing" the following morning.

We have combed the record for evidence of an adjudicatory hearing and the adjudicatory order that would have followed such a hearing. In the petition to terminate, DCS first alleged that the "Sullivan County Juvenile Court adjudicated the child dependent and neglected on October 25, 2012 after issuing an emergency protective order placing the child in temporary state custody on September 12, 2012." A few paragraphs later, DCS alleged that the "Juvenile Court adjudicated the child dependent and neglected on December 6, 2012 and placed her in DCS custody, pursuant to a petition filed in Juvenile Court. . . ." The only other reference to an adjudicatory hearing came during trial in the course of the testimony of DCS case manager Elizabeth Clark. On this subject, Ms. Clark's testimony, in its entirety, is as follows:

> Q: [Counsel for DCS]: . . . Could you tell The Court when the child first came into custody?

A: [Ms. Clark]: She came into custody on September 6 is when we actually did the removal, of 2012. . . .

Q: And did The Court find probable cause?

A: Yes.

Q: And are you aware of when the probable cause hearing was held?

A: I believe it was September 13th.

Q: And are you aware of whether or not there was an adjudicatory Hearing with regard to her coming into custody?

A: There was.

Q: And do you recall when that was?

A: October 25th.

Q: And are you aware whether or not there was an adjudicatory order entered?

A. Yes.

The petition and Ms. Clark's testimony certainly suggest that an adjudicatory hearing was held and a dependency and neglect order entered. Father does not claim otherwise. In our view, however, the mere suggestion or possibility of an order adjudicating the child dependent and neglected is not good enough. As discussed, the law clearly requires a prior, judicial finding of dependency and neglect as an essential element of each of the grounds for termination in this case. No such order, assuming that one even exists, was admitted into evidence during the termination trial. The absence of the necessary order is what prompted DCS to concede that an essential element of its case is not established in the record before us.

In *State Department of Children's Services v. D.W.J.*, No. E2004-02586-COA-R3-PT, 2005 WL 1528367 (Tenn. Ct. App. E.S., filed June 29, 2005), this Court reversed the trial court's order terminating a mother's rights on the grounds of substantial noncompliance with a permanency plan and persistence of the conditions that led to the removal of her

-5-

children. We held there that DCS failed to meet its burden of proof with respect to either ground by, respectively, failing to offer into evidence (1) the permanency plan or (2) proof of a court order removing the children based upon a finding of dependency and neglect. We concluded that the case manager's testimony that made "passing references" to the children's removal into DCS custody was insufficient to establish the ground of persistence of conditions as it "does not amount to clear and convincing proof of a court order. . . ." *Id*. at *4. In reversing, we further observed:

> We can not assume the existence of facts that are not in the record. Having an adequate record on appeal is crucial in any case, but it is particularly essential in a termination case where we are asked to review the decision of a trial court that forever severs the legal bond between Mother and her two children.

*Id*. In the case of *In re Corey*, this Court held that the trial court erred with respect to its finding of the same two grounds present in the instant case. In concluding that neither failure to provide a suitable home nor persistence of conditions was sufficiently proven, we stated:

> The only order entered by the Juvenile Court in this case was a protective order, removing the children from respondents' custody based on probable cause to believe the children were dependent and neglected. While a petition to declare the children dependent and neglected was filed, the children were never adjudicated dependent and neglected in accordance with *In re Audrey S.* Because there was never an actual adjudicatory hearing held nor a judicial finding of dependency, neglect or abuse, based on clear and convincing evidence, persistence of conditions under Tenn.Code Ann. § 36-1-113(g) cannot be a ground for termination of parental rights.
>
> The Trial Court erred in relying on Tenn. Code Ann. § 36-1-113(g) as a ground for termination. Similarly, Tenn. Code Ann. § 36-1-102(1)(A)(ii) also requires an adjudication of dependency and neglect by the Juvenile Court before abandonment for failure to provide a suitable home can be shown.

2010 WL 2490758 at *4.

It was DCS's burden to prove, by clear and convincing evidence, the existence of at

least one ground for termination. To meet its burden in the present case, DCS was required to offer proof of an order in which the child was adjudicated dependent and neglected. Despite the various indications and even Father's acknowledgment that there was such a judicial finding of dependency and neglect, no adjudicatory order appears of record. Consistent with our prior holdings, we conclude that neither the trial court nor this Court is permitted to proceed to termination absent clear and convincing proof of every necessary element of a ground for termination. Based on the foregoing, the grounds of abandonment by failure to provide a suitable home and the persistence of conditions that led to the child's removal were not established by clear and convincing evidence in the present case because of the absence of the necessary order. Because no grounds other than these two were alleged, the order terminating Father's parental rights cannot stand.

In light of our conclusion that no ground for terminating Father's rights was sufficiently proven, we do not reach the related issue of whether there was clear and convincing evidence to show that termination is in the best interest of the child. Lest there be any doubt, we emphasize that this decision has absolutely no effect on the child's custody. Pending further order of the trial court, custody remains as it was before our decision in this case.

The judgment of the trial court is reversed and the petition to terminate Father's parental rights is hereby dismissed, with costs on appeal and at the trial court level taxed to the appellee, the Tennessee Department of Children's Services. This case is remanded to the trial court, pursuant to applicable law, for the collection of costs assessed for the trial court level.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE